**Elliot Luis STRICKLAND, Jr., Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 17318.**

United States Court of Appeals
Eighth Circuit.

Jan. 8, 1964.

Ben Ely, Jr., St. Louis, Mo., for appellant.

William C. Martin, Asst. U. S. Atty., St. Louis, Mo., for appellee, and Richard D. FitzGibbon, Jr., U. S. Atty., St. Louis, Mo., on the brief.

Before MATTHES and MEHAFFY, Circuit Judges, and MICKELSON, District Judge.

MICKELSON, District Judge.

Appellant, Strickland, has appealed from an order denying correction of sentence under Rule 35, Federal Rules of Criminal Procedure.

On March 28, 1958, appellant, appearing with court appointed counsel, waived prosecution by indictment and consented to be proceeded against by information. The information charged appellant with willfully causing interstate transportation of three forged checks, each check a separate count, in violation of sections 2314 and 2(b) of Title 18 U.S.C.A. That same day, upon arraignment, a plea of guilty was entered to each of the three counts. On April 10, 1958, appellant was sentenced to three years imprisonment on each count, the sentences to run consecutively, for a total of nine years imprisonment. No issue is raised as to the validity of the sentence imposed under Count 1.

The late Judge Moore granted appellant a hearing under Rule 35 for the pur-

pose of determining whether Counts 2 and 3 of the information constituted more than one offense under the rule laid down in Castle v. United States, 368 U.S. 13, 82 S.Ct. 123, 7 L.Ed.2d 75 (1961), and followed in Kessel v. United States, 303 F.2d 563 (8 Cir. 1962), wherein it was held that simultaneous interstate transportation of more than one falsely made money order constituted a single offense under 18 U.S.C.A. § 2314.

At the hearing below, Judge Meredith presiding, 214 F.Supp. 640 (E.D.Mo. 1963), held that if the checks in Counts 2 and 3 of the information were simultaneously transported in interstate commerce, the same would constitute only one offense under 18 U.S.C.A. § 2314, relying upon Castle and Kessel, supra. He further held that the appellant failed to sustain his burden of proving that the checks were simultaneously transported in interstate commerce, and stated, at page 642, of 214 F.Supp.

> "At best the facts shown by the petitioner raise only the possibility that the checks in Count 2 and Count 3 may have been transmitted in the same shipment by the Federal Reserve Bank at St. Louis, Missouri, to the Federal Reserve Bank at Jacksonville, Florida."

Count 2 of the information charged that on or about March 13, 1958, the appellant caused to be transported in interstate commerce from St. Louis, Missouri, a forged check drawn on the Barnett National Bank of Jacksonville, Florida, dated March 8, 1958, in the amount of $150.00, payable to Reverend Elliot L. Strickland, Jr., and signed E. A. Paul, M.D. Count 3 of the information is identical except that the check was for the amount of $75.00.

The evidence at the hearing disclosed that both checks were cashed the same day, March 13, 1958, in St. Louis, Missouri, each at a different business establishment. The $75.00 check was cashed at Famous-Barr Co. and was deposited in Boatmen's National Bank, St. Louis, on March 14, 1958. Under ordinary business practices, it would have been sent to the Federal Reserve Bank of St. Louis and by it transmitted to the Federal Reserve Bank of Jacksonville, Florida, that same day. March 14, 1958, was a Friday. On March 17, 1958, this check was sent by the Federal Reserve Bank of Jacksonville, Florida, to the Barnett National Bank of Jacksonville, Florida, and was received by said bank that same day. It was not shown when this check was received by the Federal Reserve Bank of Jacksonville. This $75.00 check was produced at the hearing by an employee of Famous-Barr Co. The $150.00 check was cashed at the Lane Bryant Store in St. Louis, Missouri. Although it was cashed March 13, 1958, the next date definitely ascertainable as to the location of this check is March 17, 1958, when it was received by the Barnett National Bank in Jacksonville, from the Federal Reserve Bank of Jacksonville, in the same clearing with the Famous-Barr check. This $150.00 check was not available at the time of the hearing.

Appellant attempted to show at the hearing, by the use of normal business practices, that the Lane Bryant check would have been in the same Federal Reserve Bank pouch with the Famous-Barr check in their interstate transportation from St. Louis to Jacksonville. The office manager of Lane Bryant, the auditor of the Mercantile Trust Co. (the bank with which Lane Bryant conducted its banking), and the manager of the collection department of the Federal Reserve Bank of St. Louis, were called as witnesses, and testified as to their normal business practices at the time this check was cashed. According to their testimony, the check would have been deposited in the Mercantile Trust Co. the day following its cashing at Lane Bryant, i. e., March 14, 1958. That same day, the Mercantile Trust Co. would have sent the check to the Federal Reserve Bank of St. Louis, which would have forwarded it on the same day to the Federal Reserve Bank in Jacksonville. If the Lane Bryant check was received at the Federal Reserve Bank in St. Louis on the same

day as the Famous-Barr check, they probably would have been forwarded to the Federal Reserve Bank in Jacksonville in the same pouch.

While it is, therefore, possible that the two checks did travel from St. Louis to Jacksonville simultaneously, this is at best speculative. None of the witnesses had any personal knowledge of the movement of this Lane Bryant check. Each of the witnesses testified that there were exceptions to their normal business practices, but none of them knew whether or not any of such exceptions occurred on the dates in question. The fact that March 14th was a Friday and March 17th was a Monday adds some strength to appellant's position, but it does not elevate the total evidence to the required degree of proof. In argument, counsel for appellant stated that banks in St. Louis are closed on Saturday, but there was no evidence submitted on this point. The witness from the Federal Reserve Bank testified that there were two daily pickups by the Express Co., both in the late afternoon. If this Lane Bryant check came in too late for the first pickup, it could have been included in the second, and thus would not have been transported simultaneously with the Famous-Barr check, and doubtless would have been received on Monday by the Barnett National Bank of Jacksonville with the Famous-Barr check. The Federal Reserve Bank in St. Louis does not maintain any records of individual checks received by it for transmittal to the Federal Reserve Bank in Jacksonville, and thus the record is silent as to the precise movement of these two checks.

Even if we assume, which we do not, that the rule promulgated in Castle, supra, is to control where two or more illegal checks are drawn in separate transactions in one state on a bank in another state and through the coincidence of business and banking procedures the checks are transported simultaneously in interstate commerce, we would nevertheless and for the reasons above stated, be required to sustain the action of the lower court.

The appellant has the burden of proof in this collateral attack on his sentence. We agree with Judge Meredith that the appellant failed to sustain his burden of proof by showing only a possibility that the checks were transported simultaneously in interstate commerce.

The order appealed from is affirmed.