**UNITED STATES of America,**
**Plaintiff,**

v.

**Warren W. KETCHUM, Defendant.**

**Warren W. KETCHUM, Petitioner,**

v.

**UNITED STATES of America,**
**Respondent.**

**Crim. No. 26908;  Civ. No. 16773.**

United States District Court
D. Maryland.

July 25, 1967.

Thomas J. Kenney, U. S. Atty., and Paul R. Kramer, Asst. U. S. Atty., for the United States.

Edward F. Shea, Jr., Baltimore, Md., court-appointed, for Warren W. Ketchum.

FRANK A. KAUFMAN, District Judge.

"This case is to be classified with those others, not uncommon, which involve nothing more than a 'disappointed expectation when a plea of guilt is not productive of the light sentence confidently expected.'" Verdon v. United States, 296 F.2d 549, 553 (8th Cir. 1961).[1]

In Civil 16773, Warren W. Ketchum seeks release from federal custody and his present confinement in the Atlanta Penitentiary pursuant to 28 U.S.C.A. § 2255. In Criminal 26908, Ketchum has moved to be permitted to withdraw his pleas of guilty, pursuant to Rule 32(d) of the Federal Rules of Criminal Procedure, which provides, inter alia, that "to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea." At a consolidated hearing, held in both cases in December, 1966, and lasting approximately five court days, testimony was heard from seventeen persons, including Ketchum; Frances Irene Stanley, who is currently serving a federal sentence imposed at the same time as Ketchum was sentenced in Criminal 26908, in United States v. Frances Irene Stanley, Criminal 26901, D.C. Md., April 30, 1965 (Mrs. Stanley, though never married to Ketchum, is referred to by him as his wife); three Oklahoma City police officers; five F. B.I. agents stationed at one or more times in Oklahoma City or Baltimore; the Assistant Superintendent of Education at the Atlanta Penitentiary; an assistant to that official; and a consulting psychologist at that institution. Ketchum was ably represented during the hearing by court-appointed counsel who has filed an exhaustive seventy-one page, post-hearing memorandum on both the facts and the law. The Court is most grateful to him and to Government counsel for their thorough presentations both during and after the hearing.

In the section 2255 case Ketchum bases his position upon the denial of certain of his constitutional rights. In the alternative, in the criminal case, he seeks to have his conviction set aside and to withdraw his guilty pleas in Criminal 26908. For the reasons stated in this opinion this Court will not grant relief in either case and hereby denies the petition in Civil 16773 and the motion in Criminal 26908.

Ketchum was born in Virginia in 1920. His formal education ceased at the age of sixteen when he dropped out of school. At the age of sixteen or seventeen he was convicted in Virginia of burglary and committed to the State Board of Welfare. In 1939 he received a three-year suspended sentence for violation of the Dyer Act, violated his parole and served eighteen months at Petersburg. Thereafter he

1. Quoting from United States v. Weese, 145 F.2d 135 (2d Cir. 1944).

served in federal institutions for Dyer Act violations, in San Quentin for burglary and forgery in California, and in Virginia for forgery. His record includes several escapes. He was wanted in Virginia as a parole violator when apprehended in connection with this case. He had spent a considerable portion of his life prior to his sentencing in Criminal 26908 in confinement institutions. Ketchum can read and write, and has an I.Q. of 119. He is described by Dr. Bryan, consulting psychologist at the Atlanta Penitentiary, as of "almost superior intelligence." Counsel for defendant objected to the ruling of this Court during the December, 1966 hearing, pursuant to which the Court permitted Dr. Bryan to express his opinion that, on April 30, 1965 (the date Ketchum was sentenced in Criminal 26908), Ketchum had the mental capacity to understand the proceedings conducted that day in this Court. At that time Judge Harrison L. Winter, then a United States District Judge, accepted pleas of guilty by Ketchum to both counts of a two-count indictment and sentenced Ketchum to eight years on the first count and seven years on the second count, the terms to run consecutively.

▮▮▮ Ketchum's counsel contends that Dr. Bryan's opinion rests upon an insufficient factual basis and that, in addition, Dr. Bryan's expression of expert opinion upon the ultimate issue usurped this Court's fact-finding function. This Court finds that a proper foundation was laid by the Government for Dr. Bryan's testimony. Dr. Bryan had before him the Atlanta and the prior prison records and test results of Ketchum. Also, before taking the witness stand, Dr. Bryan observed Ketchum for several days during the December 1966 hearing and heard him testify at length. As to the "ultimate question" objection, it has been rejected "as a dogmatic rule" by the Fourth Circuit in Meredith v. United States, 238 F.2d 535, 543 (4th Cir. 1956) and cases cited therein. This Court holds that it has the right to give weight and attention to Dr. Bryan's testimony. But

even without so doing, this Court, after reading the transcript of the proceedings on April 30, 1965, after listening to Ketchum testify in the December 1966 hearing on direct examination and on cross-examination, and after observing him in the courtroom during that hearing and noting his participation at the trial table through note-taking and consultation with his attorney, has no difficulty whatsoever in concluding that Ketchum clearly had the capacity to understand, and in fact understood, the careful detailed explanations which Judge Winter made to him; the nature of his own guilty pleas; the maximum sentences which were possible; and the historical recital of his own criminal record.

The cases involving Ketchum (Criminal 26908) and Mrs. Stanley (Criminal 26901) involved violations of 18 U.S.C.A. §§ 2314 and 2 in connection with the same matter, and were called together for arraignment in this Court on April 30, 1965 before Judge Winter. Separate indictments had been returned because Mrs. Stanley was in custody and Mr. Ketchum was not when Mrs. Stanley was indicted. Ketchum was later taken into custody in Oklahoma City and the indictment against him followed.

Judge Winter first questioned both defendants concerning their lack of representation by counsel:

THE COURT: Is either defendant represented by counsel? Do you have an attorney, Mrs. Stanley?

DEFENDANT STANLEY: No, I do not.

THE COURT: Are you intending to obtain an attorney?

DEFENDANT STANLEY: No sir, I was not.

THE COURT: Is this because you are unable to afford one?

DEFENDANT STANLEY: It is because I wish to plead guilty.

THE COURT: If you wanted an attorney, could you afford to employ one, Mrs. Stanley?

DEFENDANT STANLEY: Yes, sir.

THE COURT: But you feel that you do not want one?

DEFENDANT STANLEY: Yes, sir.

THE COURT: Now, Mrs. Stanley, I do not know whether you were in the courtroom when I was trying to explain to one of the other defendants before me this morning, but in the trial of a criminal case, there are always two issues, or there may be two issues.

The first is whether the defendant is guilty or not and if it is found that the defendant is guilty, there is the very substantial issue, and sometimes much more troublesome issue, of what is a proper punishment to be imposed, in other words what is the proper disposition to be made of the case.

If you conclude that you want to plead guilty and if after inquiry it appears to the Court that it is proper to let you plead guilty, in other words, to accept your plea, there is still the very substantial question of what is a proper disposition to be made of your case.

Now, I tell you from my own experience that an attorney at that stage of a criminal case is just as important, if, indeed, in many instances not more important than on the issue of guilt or innocence.

Under those circumstances, I ask you, Mrs. Stanley: Do you not wish to reconsider and to have an attorney represent you, even if after consulting with your attorney, you conclude that you still wish to plead guilty?

DEFENDANT STANLEY: I do not wish an attorney.

THE COURT: All right. I have no authority to require you to have one, Mrs. Stanley; if it is your considered desire not to have one, you certainly are entitled to proceed without one. I was simply suggesting to you reasons that you may have overlooked as to why an attorney could be of some help to you, but you say that you feel that you do not want one?

DEFENDANT STANLEY: Yes, sir.

THE COURT: I see.

How about you, Mr. Ketchum? Do you have—

DEFENDANT KETCHUM: Same as her.

THE COURT: If you wanted one, would you be able to afford one?

DEFENDANT KETCHUM: Yes, sir.

THE COURT: But you feel that notwithstanding that an attorney might be of considerable assistance in the matter of punishment to be imposed, that you still do not want to be represented?

DEFENDANT KETCHUM: No, sir.

THE COURT: All right, Let us proceed then.

The indictments against Mrs. Stanley in Criminal 26901 and Ketchum in Criminal 26908 were set forth in two counts, charging each of them as principals, and as aiders and abettors, with causing to be transported in interstate commerce from Lexington Park, Maryland to Portsmouth, Virginia two specified falsely made, forged, altered and counterfeit checks in the respective amounts of $69.-72 and $84.00. Judge Winter first ascertained from Mrs. Stanley that she could read and write, had been furnished a copy of the indictment, and understood the charges in it. He then reviewed and explained the contents of the indictment and satisfied himself that Mrs. Stanley understood the charges; that she had no question in her mind that she was guilty; and that she knew that she was under no obligation to admit her guilt, had the right to require the Government to prove her guilty beyond a reasonable doubt, had the right to a jury trial, had not been subjected to any pressures, threats or promises of leniency, and that she "could be fined up to $10,000 or imprisoned up to ten years, or both" in connection with each of the two counts of the indictment against her. (Transcript of April 30, 1965, proceedings in Criminal 26901 and

Criminal 26908, at page 9). Judge Winter then repeated the process with Ketchum, using almost identical words and receiving the same answers from Ketchum as he had from Mrs. Stanley. Judge Winter informed Ketchum (Transcript of April 30, 1965, proceedings in Criminal 26901 and Criminal 26908, at page 13) that he "could be fined up to $10,000 on each count or imprisoned up to ten years * * * making a total possible fine of $20,000 and a total possible imprisonment of twenty years." Ketchum stated that he understood and still wanted to plead guilty.

After Judge Winter accepted the pleas of guilty of both defendants to each count in their respective cases, the proceedings continued as follows:

[THE COURT] Now, Mrs. Stanley and Mr. Ketchum, let me ask you collectively this question. In a case of this type, I know nothing about you, either of you; I know nothing about the circumstances of these offenses.

I would ordinarily request the preparation of a presentence report before I undertook to sentence you, particularly if you have no previous record; I do not know whether you do or not. The preparation of such a report would take a little while; it would take several weeks at least.

Do you have any contrary feeling about whether such a report should be prepared or not? Are you both in jail at the present time?

DEFENDANT KETCHUM: Yes, sir.

DEFENDANT STANLEY: Yes, we are, and I would not wish a report.

THE COURT: I see. You are unable to make bond, is that the problem? Has bond been fixed too high for you to get out?

DEFENDANT KETCHUM: Yes, sir.

THE COURT: What is it? Here, I can find it.

MR. CARSON: I believe it's set at $25,000.00 for each, Your Honor.

THE COURT: I beg your pardon?

MR. CARSON: Bond is set in the amount of $25,000.00 as to each, I believe.

THE COURT: Is there any amount of bond which you could make, Mr. Ketchum, or you, Mrs. Stanley?

DEFENDANT KETCHUM: Well, Your Honor, I'd just rather go ahead and get this over with.

THE COURT: I see.

DEFENDANT KETCHUM: And waive the preliminary hearing for the probation report.

THE COURT: And you feel the same way, do you Mrs. Stanley?

DEFENDANT STANLEY: Yes, sir.

THE COURT: All right. You both go and sit down and let me hear from Mr. Carson, then I will give you an opportunity to reply. I am not sure whether I can make final disposition without a presentence report or not but let me hear the case and see whether I can.

Mr. Carson, the Assistant United States Attorney handling the cases, then reviewed the extensive criminal records of both defendants. Ketchum offered a few rather minor corrections on behalf of himself and Mrs. Stanley, of which the Court took note. Mrs. Stanley said she had no statement she wished to make. The Court then imposed sentence:

[THE COURT] I regret to say to both of you that from the standpoint of your records up to now, I have little hope that incarceration is going to serve any real rehabilitation function, but I certainly think that the public is entitled to be protected from you for a while at least.

So, Mr. Ketchum, as to the first count of the indictment to which you have pleaded guilty, I commit you to the custody of the Attorney-General for a period of eight years.

On the second count, I commit you to the custody of the Attorney-General

for a period to seven years, the terms to run consecutively.

Mrs. Stanley, on each of the two counts of the indictment to which your pleas of guilty have been accepted, I commit you to the custody of the Attorney-General for a period of five years, your terms also to run consecutively.

■ No detailed analysis of applicable case law is necessary to conclude that all of the requirements of Rule 11 of the Federal Rules of Criminal Procedure were met.[2] See United States v. Ford, 363 F.2d 375 (4th Cir. 1966); Pilkington v. United States, 315 F.2d 204 (4th Cir. 1963).

On May 1, 1965, Ketchum wrote to Judge Winter from the Baltimore City jail, requesting sentence reductions for himself and Mrs. Stanley. The letter included no mention of any alleged presentencing promise made to Ketchum by the F.B.I.

After his arrival at the Atlanta Penitentiary, in May, 1965, Ketchum told a classification officer he was unhappy with the length of his sentence and that he planned to ask the judge who had sentenced him to run his sentences concurrently instead of consecutively because he got too much time for offenses involving less than $150. Also, shortly after his transfer to Atlanta, Ketchum filled in a questionnaire and stated in one of his answers that he was guilty of the offenses charged in Criminal 26908.

On May 29, 1965, in a further letter to Judge Winter requesting sentence reduction, Ketchum for the first time referred to alleged promises made to him by the F.B.I. Judge Winter, replying in a letter dated June 7, 1965, wrote to Ketchum:

\* \* \* In your letter you raise a number of other points. You state

that you were told by the F.B.I. that if you pleaded guilty you would receive a lesser sentence than if you went to trial and were convicted. You will remember that I questioned you on this matter, and you replied that no such promise, suggestion or inducement had been made by anyone. Certainly, I had no knowledge that this was any factor motivating your plea, or that any representation, if any was made, had been made to you on behalf of anybody representing the Government.

If in fact you claim that such a representation was made, and that fact is established to be true, your plea of guilty cannot be allowed to stand. Under the circumstances, if you wish to exercise your rights you should file a motion under 28 U.S.C.A. § 2255, and I enclose a set of forms for that purpose.

You also state in your letter that you were not aware of the sentence which could be imposed on you, but you may recall that I described to you the maximum sentences which could be imposed on each of the two counts, and you may remember them sufficiently also to know that I did not impose the maximum sentence.

Further, you state that you do not remember transporting any check from Lexington Park, Maryland, to Portsmouth, Virginia. At the time of your questioning, I asked you, after describing the charges made against you, whether there was any question in your mind but that you did commit the acts charged, and you replied that there was no question \* \* \*.

Meanwhile, on June 6, 1965, Ketchum wrote to the Office of the United States Attorney in Baltimore asking that his total sentence be cut to ten years so that it would be the same as Mrs. Stan-

---

2. Rule 11 provides: " \* \* \* The court may refuse to accept a plea of guilty, and shall not accept such plea \* \* \* without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea \* \* \* The court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea."

ley received. On June 25, 1965, Ketchum filed a motion for reduction of sentence.

After Ketchum filed his motion pursuant to 28 U.S.C.A. § 2255, and after pleadings and memoranda had been filed by the Government and by Ketchum, Judge Winter appointed counsel to represent Ketchum, permitted an amendment to the section 2255 motion to enable the further motion under Criminal Rule 32(d) to be made, and ordered a plenary hearing to determine if there had been any F.B.I. promise of a lesser sentence.

The testimony at the lengthy hearing in December 1966, established clearly there was no such promise made by the F.B.I. On April 1, 1965, Ketchum and Mrs. Stanley were in Oklahoma City en route to California. Ketchum attempted to replenish their funds by trading in his Cadillac for another car and some cash. A car dealer, inspecting the Cadillac, discovered an empty holster and a pair of handcuffs in the car, suggested to Ketchum he try another nearby used car dealer's lot, and, after Ketchum left, telephoned the Oklahoma City police. Three Oklahoma City police officers arrived at the second lot almost at the same time as did Ketchum. In the next few minutes, the officers had identified themselves; had become suspicious of Ketchum because of his obviously bleached hair and general appearance, his statement that he had lost his wallet in another city in Oklahoma considerably distant from, and off of, any normal route to his stated California destination, his answers to their questions, and his nervousness and his desire to be off; had telephoned a description of and information about the man and his car to the F.B.I.; and had seen in the car the handcuffs, empty holster and an acetylene torch, hammers, and other tools. Ketchum said he was a sheetmetal worker and these were tools of his trade. One of the three Oklahoma City police detectives had been a machinist for many years before becoming a policeman. He testified he told Ketchum the latter's hands were too soft for those of a machinist, that when he asked Ketchum what was the difference between a contract shop and a repair shop, Ketchum's reply was "huh?", and that the tools appeared to him (the Oklahoma policeman ex-machinist) to be a set of burglar tools. Ketchum claimed the detectives searched the car and also took from his shirt pocket a receipt covering the motel room where Ketchum and Mrs. Stanley were staying in Oklahoma City. The detectives denied the search of the car or of Ketchum's person. They said they noticed the handcuffs and empty holster (concerning which, they had previous information from the telephone call of the first car dealer Ketchum had visited) from the outside of the car and that Ketchum himself opened the trunk to exhibit his tools in order to prove that he was the machinist he represented himself to be.

To prevent Ketchum's leaving the second used car lot as he stated he was going to do, one of the three Oklahoma City policemen arrested Ketchum on the charge of vagrancy. Afterwards, Ketchum was driven by the police to the motel at which he and Mrs. Stanley were staying. The police testified Ketchum directed them to the motel and then to his room; Ketchum says the police knew where to go because of the motel room receipt taken from him. In any event, one of the policemen entered the motel room, observed Mrs. Stanley, saw and took Ketchum's wallet and pistol which were openly and visibly lying in the room and ordered Mrs. Stanley to come with him.

Mrs. Stanley and Ketchum were driven to the Oklahoma Police Headquarters, booked and locked up. Within minutes after their arrival at the Oklahoma Police Headquarters, the F.B.I. telephoned to that headquarters that Ketchum and Mrs. Stanley were federal fugitives.

Ketchum and Mrs. Stanley were turned over to the F.B.I. by the Oklahoma City Police during the afternoon of the day they were arrested. After being taken into custody, Ketchum was not interrogated by the Oklahoma City

police before the arrival of the F.B.I. agents. Ketchum was advised before being interrogated by the F.B.I. that he did not have to say anything, that anything he did say could be used against him in a court of law, that he had a right to talk to a lawyer before his interrogation, and that the Court would appoint a lawyer for him if he could not afford one. The F.B.I. agents did not, as they testified they have done since the Supreme Court's decision in Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), advised Ketchum he could have a lawyer present while he was being interrogated. It is clear that pre-*Miranda,* if not post-*Miranda,* standards were met, particularly since this Court finds that no force, coercion, promises, threats, inducements or the like, of any kind, were used directly or indirectly by any of the Oklahoma or federal officers at any time between the Oklahoma City police arrest on April 1, 1965 and the sentencing in Baltimore in this Court on April 30, 1965.

Ketchum and Mrs. Stanley testified to alleged harsh handling at the Oklahoma police headquarters by the Oklahoma City police. They also said that during interviews in Oklahoma City they were each promised leniency by the F.B.I. if they would plead guilty in this Court to the charges under 18 U.S.C.A. §§ 2314 and 2; that one or more of the agents promised to write to the judge and informed them that a light sentence of perhaps five years for Ketchum was probable and that perhaps Ketchum would be released by this Court to the Virginia authorities and that his (old) unexpired Virginia and (new) federal (Maryland) sentences would be concurrent; and that Mrs. Stanley would get no more than a three-year sentence and maybe service of that term would be suspended. Ketchum and Mrs. Stanley stated they were explicitly told by the F.B.I. not to mention anything to the Court at the time of sentencing about promises of leniency but that the F.B.I. would communicate with the federal

court in Baltimore before the court proceedings in connection with sentencing took place. All testimony of Ketchum and Mrs. Stanley about promises of leniency by the F.B.I. and any ill-treatment by the Oklahoma City police (none by the F.B.I. was claimed) were denied by all of the Oklahoma City policemen and the F.B.I. agents who testified during the December 1966 hearing.

This Court expressly rejects the credibility of the statements of Ketchum and Mrs. Stanley concerning promises, inducements and ill-treatment, after listening to their testimony and the testimony of the other witnesses, and after observing Ketchum, Mrs. Stanley, the Oklahoma City policemen, and the F.B.I. agents in court over a period of approximately five days. This Court finds that there was no coercion of any kind by either the Oklahoma City police or the F.B.I. and that there were no direct or indirect inducements to obtain a guilty plea. Most of the questioning of Ketchum and Mrs. Stanley by the F.B.I. in Oklahoma City did not concern the alleged Maryland forged check offenses, but was directed to other alleged or possible offenses committed by one or both of them in Hawaii and/or Nevada. On April 2, 1965, Ketchum after having been advised of his constitutional rights, admitted to the F.B.I. that he had cashed the checks in Lexington Park, Maryland, stated he wanted to return to Maryland to face the outstanding federal charges there pending against him, and to have that matter handled in Maryland. Otherwise, he refused further to discuss the Maryland charges or to give any signed statement.

Ketchum and Mrs. Stanley were held in Oklahoma City for about ten days before they were returned to Baltimore. Ketchum complains of numerous violations of his rights between the date of his April 1st arrest and his return to Baltimore. He also alleges that the pattern of express or at least implied inducement to get him to plead guilty continued after he reached Baltimore. This Court finds that there was no such in-

ducement at any time or place. While in Oklahoma City Ketchum informed one of the F.B.I. agents that he did not want the federal judge in Baltimore who sentenced him to see his "rap" sheet (criminal record). On April 30th, Ketchum requested Judge Winter to sentence him immediately without obtaining a presentence report. Ketchum's statements before, during and since April 30, 1965 are those of a man who hoped that the sentencing judge would put on blinders and look only at the less than $150 involved in connection with the Maryland forged checks offenses and disregard his prior record.

Ketchum's pleas of guilty to both counts of the two-count indictment against him were voluntarily given. So was his April 2, 1965 statement to the F.B.I. covering the Maryland forged checks episode. Ketchum was properly advised in Oklahoma City by the F.B.I. of his constitutional rights. He was taken before a United States Commissioner in Oklahoma City on the afternoon of the day of his arrest. Clearly, there was no violation of Federal Criminal Rule of Procedure 40(b) or of the *McNabb-Mallory* rule. Mallory v. United States,

354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed. 2d 1479 (1957); McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943). The reason why Ketchum was not previously taken before any Oklahoma committing magistrate was that the Oklahoma City police knew within a few minutes after Ketchum was booked at the Oklahoma City police headquarters that the F.B.I. were coming that day to take Ketchum into custody as a federal fugitive.

There may perhaps have been error or confusion in connection with the advice given to Ketchum during the first several days of April, 1965 by the F.B.I. in Oklahoma City concerning Rule 20 of the Federal Criminal Rules of Procedure, and whether Ketchum had the choice of pleading in the Federal District Court in Oklahoma City rather than in the Federal District Court in Baltimore. Under that Rule, as it then existed,[3] the possibility of Ketchum pleading in Oklahoma City did not exist before April 6, 1965, as he was not indicted in Baltimore until that day. Further, even under Rule 20 as it is currently written,[4] Ketchum could only have pleaded in Oklahoma City with the consent

3. The pertinent provisions of Rule 20, as in force and effect in April 1965, were as follows:

A defendant arrested in a district other than that in which the indictment or information is pending against him may state in writing, after receiving a copy of the indictment or information, that he wishes to plead guilty or *nolo contendere*, to waive trial in the district in which the indictment or information is pending and to consent to disposition of the case in the district in which he was arrested, subject to the approval of the United States attorney for each district. Upon receipt of the defendant's statement and of the written approval of the United States attorneys, the clerk of the court in which the indictment or information is pending shall transmit the papers in the proceeding or certified copies thereof to the clerk of the court for the district in which the defendant is held and the prosecution shall continue in that district. If after the proceeding has been transferred the defend-

ant pleads not guilty, the clerk shall return the papers to the court in which the prosecution was commenced and the proceeding shall be restored to the docket of that court. The defendant's statement shall not be used against him unless he was represented by counsel when it was made.

4. The pertinent provisions of Rule 20, as amended effective July 1, 1966, provide as follows:

(a) *Indictment or Information Pending.* A defendant arrested or held in a district other than that in which the indictment or information is pending against him may state in writing that he wishes to plead guilty or *nolo contendere*, to waive trial in the district in which the indictment or information is pending and to consent to disposition of the case in the district in which he was arrested or is held, subject to the approval of the United States attorney for each district. Upon receipt of the defendant's statement and of the written approval of the United States attorneys, the clerk of

of the United States attorneys in both Baltimore and Oklahoma City. In any event, whether Ketchum thought he had a choice between Oklahoma City and Baltimore, he in fact voluntarily stated that he wanted to return to Baltimore and to plead guilty in Baltimore.

■ Ketchum complains that his arrest in Oklahoma City was illegal; questions the constitutionality of Oklahoma's vagrancy laws; and asserts that even if there was no illegal search and seizure at the used car lot, the warrantless searches of Ketchum's motel room, of his automobile (the latter during the afternoon of April 1st following his having been jailed) and the seizure of articles in both instances, were illegal.

* * * The issue whether the police, though lacking enough evidence to justify arrest and incarceration, may not request or even demand that a person suspected of serious crime accompany them to a suitable place of interview for a reasonable period of investigation is so important and the proper answer so doubtful, see e. g., Watts v. State of Indiana, 338 U.S. 49, 58, 61–62, 69 S.Ct. 1347, 93 L.Ed. 1801 (1949) (concurring and dissenting opinion of Mr. Justice Jackson); Culombe v. Connecticut, supra, 367 U.S. at 576–581, 81 S.Ct. 1860 (opinion of Mr. Justice Frankfurter); United States ex rel. Corbo v. La Vallee, 270 F.2d 513, 518 (2 Cir. 1959), cert. denied, 361 U.S. 950, 80 S.Ct. 403, 4 L.Ed.2d 382 (1960); United States v. Vita, 294 F.2d 524, 528–530 (2 Cir. 1961), cert. denied, 369 U.S. 823, 82 S.Ct. 837, 7 L.Ed.2d 788 (1962); United States v. Middleton, 344 F.2d 78 (2 Cir. 1965); United States v. Bonanno, 180 F.Supp. 71 (S.D.N.Y.), rev'd on other grounds, 285 F.2d 408 (2 Cir. 1960); LaFave, Arrest, 300–18, 343–53 (1965), that resolution of that issue also should await a case where the task cannot be avoided. * * * [Collins v. Beto, 348 F.2d 823, 836 (5th Cir. 1965) (concurring opinion of Friendly, J., sitting by designation)].

This Court does not consider it unavoidable in this case that it determine the validity of the procedures underlyling Ketchum's initial detention in Oklahoma City on April 1, 1965. Neither is it necessary to consider any questions concerning the alleged illegal searches and seizures. Neither Ketchum's detention on April 1, 1965 to and including the time of the F.B.I.'s notification to the Oklahoma City police that Ketchum and Mrs. Stanley were federal fugitives, nor the several searches and seizures on April 1, 1965, have any automatic or inevitable connection with Ketchum's admission on April 2, 1965 of his involvement in the Lexington Park, Maryland

the court in which the indictment or information is pending shall transmit the papers in the proceeding or certified copies thereof to the clerk of the court for the district in which the defendant is held and the prosecution shall continue in that district.

(b) *Indictment or Information Not Pending.* A defendant arrested on a warrant issued upon a complaint in a district other than the district of arrest may state in writing that he wishes to plead guilty or *nolo contendere*, to waive trial in the district in which the warrant was issued and to consent to disposition of the case in the district in which he was arrested, subject to the approval of the United States attorney for each district. Upon receipt of the defendant's statement and of the written approval of the United States

attorneys and upon the filing of an information or the return of an indictment, the clerk of the court for the district in which the warrant was issued shall transmit the papers in the proceeding or certified copies thereof to the clerk of the court for the district in which the defendant was arrested and the prosecution shall continue in that district. When the defendant is brought before the court to plead to an information filed in the district where the warrant was issued, he may at that time waive indictment as provided in Rule 7, and the prosecution may continue based upon the information originally filed.

In April 1965, and prior to July 1, 1966, a defendant arrested on a warrant, before indictment, did not have the choice now available to him under Rule 20(b).

forged check occurrences or with Ketchum's guilty pleas on April 30, 1965. In each instance the passage of time and Ketchum's own decision to speak and to plead guilty intervened. Cf. Wong Sun v. United States, 371 U.S. 471, 486, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); United States v. Close, 349 F.2d 841, 851 (4th Cir. 1965); Collins v. Beto, supra, 348 F.2d at 834–35 (Friendly, J., concurring).

■ Ketchum's contentions concerning the alleged defective arrest and searches and seizures in Oklahoma City are all collateral attacks after his conviction upon voluntary guilty pleas. Such attacks ordinarily will not be permitted. White v. Pepersack, 352 F.2d 470, 472 (4th Cir. 1965); Sullivan v. United States, 315 F.2d 304 (10th Cir. 1963); Watts v. United States, 107 U.S. App.D.C. 367, 278 F.2d 247 (1960); Thomas v. Warden, 236 F.Supp. 499, 501 (D.Md.1964), aff'd 350 F.2d 395 (4th Cir. 1965). In White v. Pepersack, supra, 352 F.2d at 472, the Court of Appeals for the Fourth Circuit stated:

It is a familiar principle that a voluntary plea of guilty does foreclose *subsequent collateral attack upon the judgment and the sentence when the attack is based upon an alleged deprivation at some earlier stage of the proceedings.* The guilty plea is acceptable however, only after a searching inquiry to assure that its tender is voluntary. Even so, the plea is not a bar to a subsequent collateral attack if it is found in those proceedings that, because of the alleged deprivation, the plea was involuntary. The rule is applied in recognition of the fact that a defendant, aware that a confession may be excludable as involuntary, may still enter a truly voluntary plea of guilty if he also knows that other admissible evidence will establish his guilt overwhelmingly. If it appears, however, that the plea was the *coerced product* of a tainted confession, the involuntary plea, entered in ignorance of his rights, does not

bar the collateral attack. [Emphasis supplied].

■ Two of the three Oklahoma City policemen had telephoned to the F.B.I. in Oklahoma City from the used car lot a description of Ketchum and of his car. Within an hour the F.B.I. had notified the local police that Ketchum was a federal fugitive. In this case— where the local Oklahoma City police observed a Virginia man with bleached blonde hair, had information that he had a pistol holster and handcuffs in a car, were told he had lost his wallet in another city in Oklahoma en route west (a city several hundred miles off his own stated route), were informed by him that he was a machinist, noted that his hands were soft and that the tools which he showed them were burglar's tools, observed his nervousness and heard him say he was about to leave—this Court is not prepared to hold that the detention of such a man under such circumstances for a period of approximately one hour is illegal. A brief detention was all that was needed in this case. Even if it be assumed that any illegal arrest or any illegal search or seizure occurred in Oklahoma City on April 1, 1965, such would not be material in this case since the plea of guilty was not here "the coerced product" of anything which took place in that city on that date. Ketchum knew that the jig was up when he was told that the F.B.I. had identified him. Thereafter his statement to the F.B.I. and his guilty pleas were the voluntary acts of a man who clearly comprehended what he was saying and doing—a man of long experience with the law and with the courts. Judge Winter ordered a hearing in this case to determine if Ketchum's guilty pleas had been induced by the F.B.I. or were otherwise than fully voluntary. After a plenary evidentiary hearing this Court has no difficulty in denying the motions in both Civil 16773 and Criminal 26908. There has been no denial of Ketchum's constitutional rights. There is no manifest injustice to correct in connection with Ketchum's guilty

908

pleas. Fed.R.Crim.P. 32(d); see Pilkington v. United States, supra, 315 F.2d at 209. During the course of the December 1966 hearing in this Court Ketchum made no claim that he is innocent of the charges in Criminal 26908. Herein there is only the desire of an oft-convicted man to have reduced the period of his confinement, the reason for the length of which was clearly and forcefully stated to him by the sentencing judge at the time sentence was imposed. For the reasons stated herein, it is ordered that the petition in Civil 16773 be, and the same is, hereby denied and the motion in Criminal 26908 be, and the same is, hereby denied.