**Warren Weldon KETCHUM**

v.

**UNITED STATES of America.**

**Civ. No. 70–705–K.**

United States District Court,
D. Maryland.

Dec. 22, 1970.

Suppplementary Opinion May 12, 1971.

Warren Weldon Ketchum, pro se.

George Beall, U. S. Atty., and Jean G. Rogers, Asst. U. S. Atty., for defendant.

## MEMORANDUM AND ORDER

FRANK A. KAUFMAN, District Judge.

Ketchum, presently serving consecutive sentences of eight and seven years imposed upon him in this Court by Judge Winter (then a District Judge) on April 30, 1965, seeks relief herein under 28 U.S.C. § 2255 for the second

time. The history of Ketchum's tender and of Judge Winter's acceptance of the guilty pleas of Ketchum and of his co-defendant, Frances Irene Stanley, is set forth in detail in this Court's opinion in United States v. Ketchum, 272 F.Supp. 897 (D.Md.1967), aff'd, Mem.Dec.No. 12,035 (4th Cir. 1968), and will therefore not be again repeated in this opinion.

Ketchum, in this second § 2255 proceeding, states no factual contentions at this time which require an evidentiary hearing in accordance with the standards enunciated in Raines v. United States, 423 F.2d 526 (4th Cir. 1970). Nor do Ketchum's contentions that his guilty pleas should not have been accepted by Judge Winter or that there was any violation of Federal Criminal Rule 11 raise any issue which was not substantially posed and determined in Ketchum's first § 2255 proceeding.

■ Ketchum does raise three issues in this second section 2255 proceeding which have not been previously stated or considered by the Fourth Circuit or by this Court. First, he contends that he did not commit, or aid and abet the commission of, the two alleged acts of forgery, because his co-defendant used her true name as payee and endorser. Ketchum states in his petition that the two checks were blank when stolen and were subsequently filled in by Frances Irene Stanley. Such filling in, in and of itself, constitutes forgery, even if the forger uses her own name as payee and endorser. *Cf.* United States v. Clay, 408 F.2d 1028 (4th Cir. 1969); United States v. Metcalf, 388 F.2d 440 (4th Cir. 1968); Jones v. United States, 234 F.2d 812 (4th Cir. 1956), cert. denied, 355 U. S. 936, 78 S.Ct. 419, 2 L.Ed.2d 418

(1958). And, of course, if, as stated by the prosecutor (Tr. 19–20), as not controverted by Ketchum or by Mrs. Stanley at the time of the sentencing, and as seemingly accepted by Ketchum at page 3 of his brief herein, the checks were in blank when they were stolen, the conclusion is compelled that the maker's signature was later added.

Second, Ketchum complains that Judge Winter erred in permitting the Assistant United States Attorney to inform him (at Tr. 27–28) that, when Ketchum was arrested,

> [i]n the car were found a number of tools: Two pry bars, one large screw driver, three punches, one pair of bolt cutters, one pair of handcuffs, one black pistol shoulder holster, one brown belt, three rubber gloves, one cutting torch, one eight-pound sledge hammer with a cut-off handle.

> In his apartment room or hotel room, there was recovered a .38 special Smith and Wesson revolver.

Judge Winter's unsuccessful efforts to persuade Stanley and Ketchum to have counsel are set forth in United States v. Ketchum, 272 F.Supp. *supra* at 899–900. Ketchum showed no hesitancy in informing Judge Winter that the Assistant United States Attorney erred in stating the Cadillac, which Ketchum was driving when arrested, had been stolen. Judge Winter and the government prosecutor accepted that correction (Tr. 26, 28–29).[1] Ketchum raised no question on the day he was arraigned and sentenced concerning any violation of his Fourth Amendment rights in connection with the discovery by the Oklahoma police at the time of his arrest of the contents in the trunk of his car or of the weapon in his room. He did, however, state those

1. Ketchum asserts in this second section 2255 proceeding that Judge Winter should have assigned counsel "after the report [presumably the prosecutor's statement] had been challenged by defendant" (Petitioner's brief herein, p. 13). The only such challenges made by Ketchum were with regard to whether the Cadillac had been stolen, and with regard to certain events in connection with prior experiences with the law of Mrs. Stanley and himself antedating all of the occurrences relating to the offenses for which they were sentenced by Judge Winter. Mrs. Stanley at no time herself questioned any of the facts stated by the prosecutor.

contentions in his first section 2255 proceeding. United States v. Ketchum, 272 F.Supp. *supra* at 906. There, this Court concluded (at 906–907) that Ketchum's statement to the F.B.I. and his guilty pleas were the voluntary acts of a man who clearly comprehended what he was saying and doing and that the validity of certain of the procedures employed by the Oklahoma law enforcement officials when Ketchum was arrested did not need to be determined because of the intervening passage of time between their occurrences and Ketchum's own decision to confess and subsequently to plead guilty.

This Court, also, in its opinion (at 904) in the first section 2255 proceeding, stated that it

> * * * expressly rejects the credibility of the statements of Ketchum and Mrs. Stanley concerning promises, inducements and ill-treatment, after listening to their testimony and the testimony of the other witnesses, and after observing Ketchum, Mrs. Stanley, the Oklahoma City policemen, and the F.B.I. agents in court over a period of approximately five days. * * *

■■ This Court (at 903) pointed in some detail to the differences in the testimony of Ketchum and of the Oklahoma policemen at the hearing in the first section 2255 case, concerning the policemen's first viewing of the tools in the trunk of Ketchum's car, and concerning the entry into the motel room. This Court, however, made no finding in the first section 2255 case as to which version of those two events this Court accepted, in view of the lack of causal connection, and also the time gap, between any alleged Fourth Amendment violation and Ketchum's voluntary confession and guilty pleas. However, after reviewing the record of the hearing in this Court in the first section 2255 case,

and with a full present recollection thereof, this Court has no hesitancy in stating that it then believed and at this time believes and accepts the testimony of the Oklahoma City policemen concerning those events, disbelieves the contrary testimony of Ketchum, and finds that those events occurred as the policemen testified they took place. Accordingly, neither the viewing of the tools in the auto trunk, nor the entry into the motel room and the subsequent viewing and seizure of the weapon, were illegal. Ketchum's pistol was lying openly and visibly in the room at the time of such entry. Thus, its seizure was permitted whether under pre- or post-Chimel v. California Standards, 395 U.S. 752, 89 S. Ct. 2034, 23 L.Ed.2d 685 (1969). *See* Porter v. Ashmore, 421 F.2d 1186, 1188–1189 (4th Cir. 1970), appeal pending, No. 110 (October Term, 1970), holding prospective only the standards established by *Chimel.*[2]

■ The warrantless search of Ketchum's automobile after his jailing does raise a serious problem in and of itself, but since that search only provided substantially the same information already obtained by the viewing of the contents of the trunk at the time of Ketchum's arrest, it is not of material or relevant import herein. Accordingly, this Court concludes that the Goverment legally obtained all of the information stated by the prosecutor to Judge Winter with regard to the tools and the weapon.

■■ Additionally, even if Judge Winter was given, at the time Ketchum pled guilty and was sentenced, information derived from illegal searches and seizures of Ketchum's automobile and/or motel room, Ketchum cannot successfully collaterally attack in a section 2255 complaint the acceptance of his guilty plea and the sentences imposed in a proceeding in which neither the sentencing judge nor, as far as the record shows,

---

2. Porter is in accord with the result reached in almost all cases considering the problem. *See, e. g.*, United States ex rel. Allison v. New Jersey, 418 F.2d 332, 338 n. 16 (3d Cir. 1969) ; Williams v.

United States, 418 F.2d 159, 162 n. 2 (9th Cir. 1969), appeal pending, 401 U.S. 646, 91 S.Ct. 1148, 28 L.Ed.2d 388 (October Term, 1970).

the prosecuting attorney, had any reason to believe that there had been any violation of any of Ketchum's Fourth Amendment rights and in which Ketchum neither made any objection when the prosecutor presented such information to the judge nor requested the trial judge to disregard such information. Ketchum voluntarily pled guilty in a proceeding in which all of the then or now existing tenets of Federal Criminal Rule 11 were carefully and meticulously observed by the sentencing judge. Ketchum's pleas of guilty were intelligently given; their acceptance by the sentencing judge is not now open to collateral attack on the ground that Ketchum, having rejected every opportunity to have counsel, failed to object to the sentencing judge's being informed of the tools and of the weapon. The standards pronounced in the Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970)—McMann v. Richardson, 397 U.S. 759, 768–769, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970)—Parker v. North Carolina, 397 U.S. 790, 797–798, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970)—trilogy, and again within the last month in North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), speak firmly to the contrary. Nor, in the factual context of this case, can Ketchum's pleas of guilty in any way be tied to or blamed upon his failure to realize that he could have asked the trial judge to strike from the record and to disregard the tools and gun information stated by the prosecutor, upon the assumption (which this Court rejects for reasons hereinabove and hereinbelow stated) that he had the right to have the trial judge so do.

There are still other reasons to reject Ketchum's newly raised tool-weapon argument. Ketchum and Mrs. Stanley asked Judge Winter not to order presentence reports (Tr. 14–15). Obviously, they both hoped Judge Winter would not find out about their lengthy criminal records. In sentencing them (Tr. 29), Judge Winter stated:

I regret to say to both of you that from the standpoint of your records up to now, I have little hope that incarceration is going to serve any real rehabilitation function, but I certainly think that the public is entitled to be protected from you for a while at least.

There is ample basis in the record to infer, at the very least, that Judge Winter's sentencing determinations were not based in any way upon the weapon-tool information. Further, under the standards of Williams v. New York, 337 U.S. 241, 246–247, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949), it may well be that a defendant has no right to object to the sentencing judge being given information unconstitutionally obtained.[3] In that regard, this Court also notes Walder v. United States, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1956), holding that, under certain circumstances, suppressed evidence may be used for purposes of impeachment. *See also* Compton v. United States, 334 F.2d 212, 217–218 (4th Cir. 1964). But see the doubts stated concerning the continuing validity of the *Walder* doctrine in Agius v. United States, 413 F.2d 915, 920 (5th Cir. 1969); United States v. Fox, 403 F.2d 97, 102–103 (2d Cir. 1968); Groshart v. United States, 392 F.2d 172, 178 (9th Cir. 1968); United States v. Birrell, 276 F.Supp. 798, 817 (S.D.N.Y.1967); and "The Impeachment Exception to the Exclusionary Rules," 34 U.Chi.L.Rev. 939 (1967). However, even if the *Walder* doctrine is rejected, that is, even if evidence obtained in violation of a defendant's Fourth Amendment rights may not be used for impeachment, nevertheless, the underlying rationale in *Williams* might well sustain the intentional reception of such evidence at the time of sentencing, by the sentencing judge. This Court, however, need not and does not adopt such a position in this case be-

3. *See also* Gregg v. United States, 394 U.S. 489, 492, 89 S.Ct. 1134, 22 L.Ed.2d 442 (1969); United States v. Zaza, 434 F.2d 66 (4th Cir., filed 11/16/70).

cause herein Judge Winter, even if the tool-weapon evidence was unconstitutionally obtained, had no way of knowing that fact, and because Ketchum himself, under the *Brady-McMann-Parker-* and *Alford* standards, cannot collaterally be heard to attack in a section 2255 proceeding acceptance of his guilty pleas upon any such grounds. And, also, as set forth *supra*, this Court finds and holds that the tool-weapon information was not unconstitutionally obtained.

The third contention raised by Ketchum for the first time herein is that he was sentenced upon a two-count indictment for what constituted a single offense. Ketchum was indicted under 18 U.S.C. §§ 2314 and 2, for transporting or causing the transportation of two forged checks in interstate commerce, or for aiding and abetting the same, from Lexington Park, Maryland to Portsmouth, Virginia. The indictment alleges that those two checks were passed on the same day. In King v. United States, 372 F.2d 946 (10th Cir. 1967); Amer v. United States, 367 F.2d 803 (8th Cir. 1966); and Gilinsky v. United States, 368 F.2d 487 (9th Cir. 1966), the Eighth, Ninth and Tenth Circuits have considered the same type of question in connection with 18 U.S.C. § 2314. The *King* opinion, filed February 15, 1967, does not cite *Amer*, and neither *Amer*, filed November 9, 1966 and amended December 5, 1966, nor *Gilinsky*, filed November 8, 1966, refers to the other.

In *King*, three checks were presented and cashed at stores in three different Utah towns on the same day. Two of the checks were received at the Arizona bank upon which they were drawn on a same subsequent day. The evidence did not disclose when the third check was so received, but the Court stated in its per curiam opinion (372 F.2d at 947) that it "apparently was received about the same time." The Court then continued (at 947–948):

> Appellant argues that the checks were transported by mail from Utah to Arizona at the same time as shown by the fact that they were all received

by the bank at or about the same time. He urges that transportation is the offense and the cases hold that when several falsely made securities are transported at the same time there is but one offense. Reliance is thus placed on Castle v. United States, 368 U.S. 13, 82 S.Ct. 123, 7 L.Ed.2d 75, on Robinson v. United States, 143 F.2d 276 (10th Cir.), and on Strickland v. United States, 214 F.Supp. 640 (E.D.Mo.1963), aff. 325 F.2d 970 (8th Cir.).

In Castle v. United States, *supra*, the court vacated the judgment appealed from on the authority of Bell v. United States, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905. In *Castle* the defendant had taken with him the falsely made money orders on his train trip from Indiana to Texas. In Bell v. United States, a Mann Act case, the defendant had transported two women in the same car on the same trip, and each count referred to each woman. The Court there held that under the statutory language, "knowingly transports" "any woman or girl," there was but one offense.

In Kessel v. United States, 303 F.2d 563 (8th Cir.), the money orders were transported by the defendants themselves on one trip, and the court in a Rule 35 proceeding, on authority of Castle v. United States which had been decided since the former opinion of the Court of Appeals, ordered the consecutive sentences on each of the several counts to be vacated, and thus changed its prior holdings. The Ninth Circuit in Gilinsky v. United States, 335 F.2d 914 (United States v. Feldman, in the District Court, 226 F.Supp. 750), considered a four count indictment for transporting falsely made checks, with consecutive sentences on each count, and ordered a hearing to determine whether the checks had been transported in one package.

This court, in Robinson v. United States, 143 F.2d 276 (10th Cir.), which was referred to by the Supreme Court in Bell v. United States, *supra*,

vacated consecutive sentences in a Mann Act conviction on several counts where the women had been transported at the same time in the same car. The standard there stated was the "same evidence test." The court however said that it should be applied with "some discrimination." We also there held that transportation was the gist of the offense, and since all the women were transported at the same time in the same car there was but one offense.

The cases above considered, except Gilinsky v. United States, *supra*, considered instances where the transportation was by the accused, where all traveled at the same time or where the accused himself directly arranged the transportation of all the items together. In the case at bar the appellant "caused" the transportation by reason of the fact that the checks were on a bank in another state, but he had no control over the time or method of transportation. This was instead a matter of chance as far as he was concerned after he had set the forces in motion by several separate acts. This factor should be given some consideration.

In the case strongly relied upon by appellant, Strickland v. United States, 214 F.Supp. 640 (E.D.Mo.1963), affirmed at 325 F.2d 970 (8th Cir.), the court did consider a check case similar to the one at bar. There the checks were cashed on the same day at various stores in St. Louis. The trial court stated that if the checks were simultaneously transported there was but one offense, and the court granted a hearing on a Rule 35 motion to develop the facts. The trial court found the facts to be that there was only a possibility that two of the checks were transported in the same shipment during the clearing process, and that this was not sufficient. The Court of Appeals (Strickland v. United States, 325 F.2d 970) held that the defendant had shown no more than such a possibility, and this was not enough to demon-strate one offense. The court did not however decide whether the rule announced in *Castle* would apply under the circumstances if it were shown that the checks were transported at one time.

We also do not decide whether the rule set forth in Castle v. United States, 368 U.S. 13, 82 S.Ct. 123 [7 L. Ed.2d 75], and Robinson v. United States, 143 F.2d 276 (10th Cir.), would apply to the case at bar even if it were shown the checks after being passed at the several stores were transported in the bank clearing process at the same time. It is sufficient to say that it was not shown that they were so transported. Only such a possibility was shown, and that is not enough.

In *Amer*, the defendant, on the same day, "passed four forged checks, each in a different business establishment," in two different Kansas cities. The four checks were all drawn on the same Missouri bank. The defendant pled guilty and was sentenced to four consecutive terms of a year and a day, with respect to four counts of an indictment, each count charging him in connection with one of the four checks. In a section 2255 proceeding, the appellant claimed that at least two of the four checks "must have travelled simultaneously" (367 F.2d at 804) in interstate commerce. Affirming the denial of relief by the District Court, the Eighth Circuit, stressing that the indictment "rests upon four separate negotiations of forged instruments, each of which *caused* a security to be transported in interstate commerce" (emphasis supplied), and that Amer thus "caused four distinct transactions," stated (at 805):

The test long accepted for determining whether there is an identity of offenses is "whether the same evidence is required to sustain them". Morgan v. Devine, 1915, 237 U.S. 632, at 641, 35 S.Ct. 712, 715, 59 L.Ed. 1153. See, also, Wilburn v. United States, 5 Cir., 1964, 326 F.2d 903; Rayborn v. United States, 6 Cir., 1956, 234 F.2d

368. Because in the instant case the indictment rests upon four separate negotiations of forged instruments, each of which caused a security to be transported in interstate commerce, it is clear that had there been no pleas of guilty and the case gone to a jury trial, separate evidence would have been required to establish each count. When this identity of offenses test is viewed in light of the established principle that *causing* the transportation in interstate commerce of forged securities suffices as a basis of prosecution, it appears evident that appellant caused four distinct transactions which resulted in four separate units of prosecution. [Emphasis in original].

The Eighth Circuit thus rejected the single-offense contention advanced by Ketchum herein if that contention rests solely upon proof of simultaneous transportation. In addition, however, the Eighth Circuit wrote (at 805–806):

Even if appellant's argument were adopted and the units of criminal prosecution were made dependent upon the happenstance of bank transmission procedure, he cannot prevail upon the facts of this case. Appellant must bear the burden of proof in a collateral attack upon his sentence. Strickland v. United States, *supra*, 325 F.2d at 972. * * * [The District Court] must be upheld in finding that appellant had failed to meet the burden of proof which requires him to decisively show whether any of the checks traveled simultaneously in interstate commerce and therefore constitute but one unit of prosecution.

In Strickland v. United States, 325 F.2d 970, 972, the Eighth Circuit also wrote:

Even if we assume, *which we do not*, that the rule promulgated in *Castle*, supra, is to control where two or more illegal checks are drawn in separate transactions in one state on a bank in another state and through the coincidence of business and banking procedures the checks are transported simultaneously in interstate commerce, we would nevertheless and for the reasons above stated, be required to sustain the action of the lower court. [Emphasis supplied in *Amer* by that Court and adopted herein].

In *Gilinsky*, the defendant pled guilty to four counts, each involving different checks, and was sentenced to consecutive sentences on three of the counts and to a concurrent sentence under the fourth count. Thereafter, Gilinsky sought under Federal Criminal Rule 35 to vacate the sentences on the ground that there was only one offense. The District Court denied relief, finding "that none of the checks traveled together and that each was transported separately from the others." (368 F.2d at 489). The Ninth Circuit, treating the indictment as if the concurrent sentence in connection with the fourth count did not exist, vacated the judgment of conviction with regard to one of the three consecutive sentence counts, holding that the District Court's finding "was clearly erroneous" and that (at 489):

[t]he repeated coincidence of time and place at the inception, during the intermediate stages and at the conclusion of the transportation, make it clear that the checks comprised two distinct units and that each unit was transported in commerce at a different time than the other. Unlike Strickland v. United States, 325 F.2d 970 (8th Cir. 1964), no gap exists in the proof to render this conclusion a mere possibility and "at best speculative."[2]

2. In *Strickland* there was a lack of substantial evidence to establish critical dates when the checks moved in commerce between the intermediate banks during the clearing process.

\* \* \* \* \* \*

Additionally, the district court appeared to rest decision upon an alternative ground that the transportation of each check would constitute a separate offense even if all the checks were shipped simultaneously in commerce. The statute itself does not

nicely delineate the allowable unit of prosecution; it provides in loose terms that transportation of "any falsely made * * * securities" constitutes a punishable offense and nowhere makes clear whether Congress intended the word "any" to be broadly inclusive or narrowly restricted in meaning.

However, there can be no real doubt regarding the proper construction of this particular penalizing provision. * * *

Then, after discussing the *Bell* and *Castle* decisions, the Ninth Circuit wrote (at 490):

The government seeks to distinguish the *Bell* and *Castle* line of decisions from the instant case; it points out that in them the defendants personally controlled the transportation during the critical period, while here Gilinsky did not and the checks came together through happenstance. We do not consider this a significant difference. Chance or circumstance often comes to the aid of a wrongdoer in the criminal law; for example, a crime may be merely assault rather than murder if the proverbial good Samaritan saves the wounded victim from death.

The prosecution also directs our attention to the fact that Gilinsky committed separate criminal acts in passing the several checks in Seattle. While this is of course true, the federal crime with which we are here concerned proscribes not the passing but rather the transportation of forged checks.

■ With all due respect to the Ninth Circuit, this Court, in the absence of any holding by the Fourth Circuit, hereby adopts the holding of the Eighth Circuit in *Amer* rejecting the contention that the happenstance of simultaneous transportation following separate passing transactions adds up to only one single violation of 18 U.S.C. § 2314. Accordingly, if Ketchum passed or aided the passage of the two forged checks in two separate transactions, he committed, in this Court's opinion, two offenses for which he was subject to the two consecutive sentences within the maximum terms which Judge Winter imposed upon him. Whether those two checks were or were not, by chance, transported simultaneously in interstate commerce from Maryland to Virginia, seems to this Court, as the *Amer* Court held, immaterial.

Moreover, Ketchum has not alleged that the two checks were simultaneously transported from Maryland to Virginia. Accordingly, even if the *Gilinsky* view is accepted, Ketchum is not entitled to the relief he seeks herein, since neither the indictment nor the transcript of the proceedings before Judge Winter discloses affirmatively that the two checks were transported simultaneously or even arrived at the Virginia bank on the same day.

Nor has Ketchum alleged, nor does the record in any way disclose, whether the two checks were passed in Lexington Park, Maryland, at one time in a single transaction or at two different times in two transactions. If there was only one passing transaction, involving two checks, in Lexington Park, Maryland, then the doctrine of *Bell* and *Castle* would appear to apply herein and entitle Ketchum to relief. Also, if there was simultaneous transportation, the *Gilinsky* holding (which this Court declines to follow) would be applicable. However, *King, Gilinsky, Amer* and *Strickland* each place upon a petitioner such as Ketchum the burden of showing simultaneous transporation in interstate commerce and hold that the possibility of such simultaneous transportation does not satisfy that burden.

■ Ketchum, in this proceeding, has the burden of establishing that there was one single transaction in Lexington Park, Maryland in order to bring himself within the "single offense" doctrine of *Bell* and *Castle*, and also has the burden of establishing the simultaneous transportation of the two checks from

Maryland to Virginia even if *Gilinsky*, rather than *Amer*, correctly construes 18 U.S.C. § 2314. Ketchum is hereby afforded the opportunity to file with this Court, within thirty (30) days from the date of the filing of this opinion, an affidavit (that is, a statement under oath), setting forth where, when and how the said two checks were passed. If Ketchum does not file such an affidavit, this Court will dismiss the contentions herein concerning the absence of more than one offense. Ketchum is also afforded the opportunity to include in his affidavit, if he so desires, information concerning simultaneous transportation so that if he is denied relief by this Court and appeals from such denial, he may present his appeal against the full background of the legal contentions he has advanced in this Court, with regard to both the passing *and* the transportation of the two checks.

For the reasons stated in this opinion, the relief sought herein by Ketchum on all grounds other than the single offense contention is hereby denied. That remaining contention is hereby held *sub curia* to permit Ketchum to proceed further in accordance with this opinion, if he so desires. Ketchum is hereby advised that any statement submitted by him must be made under oath and that he will subject himself to possible prosecution and the penalties of law if he makes any untruthful statement under oath.

It is so ordered.

## SUPPLEMENTARY MEMORANDUM AND ORDER

On December 22, 1970, this Court filed a Memorandum and Order in this case. Subsequently, Ketchum has filed several documents and the Government has filed the two checks (referred to in that Memorandum and Order) and has forwarded copies of those two checks to Ketchum.

By affidavit dated February 22, 1971, Ketchum has informed this Court that he and Mrs. Stanley "transported the subject checks from Portsmouth, Virginia, on Friday, September 13, 1963, to Lexington Park, Maryland" and "cashed the subject checks at two different super markets in Lexington Park, Maryland." The endorsements on the two checks themselves establish that they are both dated September 8, 1963; that both of the two checks are drawn on the American National Bank of Portsmouth, Virginia; and that one of said checks is in the amount of $69.72 and the other of said checks is in the amount of $84.00. The endorsement on the $69.72 check shows that it was handled by the First National Bank of St. Mary's, at Leonardtown, Maryland, on September 12, 1963 and by the First National Bank of Maryland, at Baltimore, Maryland, on September 13, 1963. The endorsement on the $84.00 check shows that it was handled on September 16, 1963 by the Citizens National Bank of Southern Maryland, Lexington Park, Maryland, after the check was apparently earlier processed either by that bank or by another bank. It is undisputed that the two checks were passed by Ketchum and Stanley in two separate transactions *and*, in addition, were not transported simultaneously in interstate commerce from Maryland to Virginia. Accordingly, for the reasons set forth by this Court in its Memorandum and Order dated December 22, 1970 Ketchum's petition is hereby denied.[1]

It is so ordered.

---

1. The Memorandum and Order in this case was filed on December 22, 1970. On April 5, 1971, the Supreme Court announced its opinion in Williams v. United States, 401 U.S. 771, 91 S.Ct. 1148, 28 L.Ed.2d 388 (1971). *Williams* held *Chimel* should not be given retroactive effect. See the discussion in this Court's Memorandum and Order filed herein on December 22, 1970 at p. 771 and in n. 2.